UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

FILED

'06 OCT 12 P 4:22

UNITED STATES OF AMERICA

v.

WESLEY TRENT SNIPES
EDDIE RAY KAHN
DOUGLAS P. ROSILE

CASE NO. 5:06-cr-22(S1)-Oc-10GRJ
Ct. 1:     18 U.S.C. § 371
Ct. 2:     18 U.S.C. §§ 287 & 2
Cts. 3-8:  26 U.S.C. § 7203

## INDICTMENT

The Grand Jury charges:

### COUNT ONE

#### A. Introduction

It is relevant to this Indictment that:

1. Defendant WESLEY TRENT SNIPES ("defendant SNIPES") was a movie actor. Defendant SNIPES resided in Windermere, in Orange County, Florida, among other places.

2. Defendant SNIPES conducted his movie business through a number of entities, some of which operated as loan-out companies. The loan-out companies contracted with movie studios to provide the services of defendant SNIPES to the studios, collected payments from the studios for the services rendered by defendant SNIPES, paid expenses related to defendant SNIPES' movie projects, and paid compensation to defendant SNIPES and others.

3. Defendant EDDIE RAY KAHN ("defendant KAHN") was the founder and leader of American Rights Litigators ("ARL") and its successor, Guiding Light of God Ministries ("GLGM"). Defendant KAHN resided in Sorrento, in Lake County, Florida.

4. ARL was formed in 1996 and conducted business from an office located in Mount Plymouth, in Lake County, Florida. In August 2003, ARL moved to an office located in Mount Dora, in Lake County, Florida, and began operating as GLGM. ARL held itself out as a "professional organization that utilizes aggressive CPAs and attorneys dedicated to legally representing and protecting the rights of American citizens." GLGM held itself out as a non-profit "Christian ministry and organization established to assist men and women in their pursuit of truth and freedom as Americans." In reality, ARL and GLGM were for-profit, commercial enterprises that promoted and sold fraudulent tax schemes that interfered with the administration of the internal revenue laws of the United States.

5. ARL and GLGM charged members a membership fee, in return for which ARL/GLGM sent power of attorney forms (Forms 2848) ("POAs") to the Internal Revenue Service ("IRS") on behalf of the members. The POAs generally listed an attorney and a certified public accountant ("CPA"), who were affiliated with ARL/GLGM, to act as the members' representatives in tax matters before the IRS. The POAs listed ARL/GLGM's address as the representatives' address. As a result, ARL/GLGM received copies of correspondence from the IRS to the members. Upon receipt of such correspondence, ARL/GLGM would contact the members to offer response letters to such correspondence, for an additional fee. These response letters, which were

authored and/or approved by defendant KAHN, made false and frivolous arguments, demands, and/or requests to the IRS.

6.    Defendant DOUGLAS P. ROSILE ("defendant ROSILE") was a former CPA, who continued to work as an accountant after his CPA licenses in Ohio and Florida were revoked. Defendant ROSILE prepared fraudulent tax returns for ARL members based on the "861 argument" (described below). Defendant ROSILE resided in Venice, in Sarasota County, Florida.

7.    The IRS was an agency of the United States Department of the Treasury. The IRS had responsibility for the ascertainment, computation, assessment, and collection of taxes, including individual income taxes.

8.    The tax laws of the United States, including the Internal Revenue Code (Title 26 of the United States Code), required every citizen and resident of the United States who received gross income in excess of the minimum filing amount established by law for a particular tax year to annually make and file an income tax return for that tax year. Examples of the types of gross income that were required to be reported on an income tax return included: (a) compensation for services, including fees, commissions, fringe benefits, and similar items; (b) gross income derived from business; (c) gains derived from dealings in property; (d) interest; (e) rents; (f) royalties; (g) dividends; (h) alimony and separate maintenance payments; (i) annuities; (j) income from life insurance and endowment contracts; (k) pensions; (l) income from discharge of indebtedness; (m) distributive share of partnership gross income; (n) income in respect of a decedent; and (o) income from an interest in an estate or trust.

9. Defendants KAHN and ROSILE, operating through ARL, promoted a fraudulent tax scheme based on the so-called "861 argument." According to the "861 argument," United States citizens and residents were not subject to tax on their wages and other income derived within the United States based on the claim that the Internal Revenue Code imposed taxes only on income derived from certain foreign-based activities. This argument was an intentionally false, fictitious, and fraudulent misapplication of section 861 of the Internal Revenue Code and the regulations thereunder. This argument has no basis in law and has been consistently rejected by courts.

10. As part of the "861 argument" scheme promoted by defendants KAHN and ROSILE, defendant ROSILE prepared fraudulent federal income tax returns (Forms 1040) and amended federal income tax returns (Forms 1040X) for ARL members, which falsely claimed that the members were not subject to federal income tax, and thus were entitled to refunds of previously withheld and/or paid taxes, based on the "861 argument." For each such fraudulent tax return, ARL charged its members a fee, half of which it paid to defendant ROSILE. In addition, if any such fraudulent tax return generated a tax refund, ARL would collect 20% of the refund from the member and pay half of such amount to defendant ROSILE.

11. So-called "Bills of Exchange" were fictitious documents fraudulently purporting to be financial instruments issued under the authority of the United States. Such documents were falsely drawn and had no material financial value.

## B. Conspiracy

12. From in or about 1999 through the date of this Indictment, in Lake and Orange Counties, in the Middle District of Florida, and elsewhere,

**WESLEY TRENT SNIPES,
EDDIE RAY KAHN,
and
DOUGLAS P. ROSILE,**

the defendants herein, did knowingly, willfully, and unlawfully combine, conspire, confederate, and agree with each other and with others, both known and unknown to the Grand Jury, to defraud the United States by impeding, impairing, obstructing, and defeating the lawful government functions of the IRS in the ascertainment, computation, assessment, and collection of the revenue: to wit, income taxes.

## C. Manner and Means

13. It was part of the conspiracy that defendants SNIPES, KAHN, and ROSILE would and did attempt, through deceit, craft, trickery, and dishonest means, to make it appear as if defendant SNIPES had no liability for federal income taxes, when in fact defendant SNIPES had such liability.

14. It was further part of the conspiracy that defendants SNIPES, KAHN, and ROSILE would and did attempt to obtain refunds of income taxes previously paid by defendant SNIPES, to which he was not entitled, through the filing of fraudulent amended federal income tax returns (Forms 1040X) based on the "861 argument."

15. It was further part of the conspiracy that defendant SNIPES would and did willfully fail to file federal income tax returns, beginning with the tax year 1999 and continuing to the date of this Indictment.

16. It was further part of the conspiracy that defendants SNIPES and KAHN would and did fraudulently present and cause to be presented to the Secretary of the Treasury "Bills of Exchange" in alleged payment of defendant SNIPES' federal income tax obligations.

17. It was further part of the conspiracy that defendant SNIPES would and did direct that taxes not be withheld from the pay of his loan-out company's workers.

18. It was further part of the conspiracy that the defendants would and did perform acts and make statements to hide and conceal and cause to be hidden and concealed the purpose of the conspiracy and the acts committed in furtherance thereof.

### D. Overt Acts

In furtherance of the conspiracy and to accomplish the objects thereof, the defendants committed the following overt acts, among others, in the Middle District of Florida, and elsewhere:

19. On or about January 8, 2000, defendant SNIPES paid defendant KAHN a consulting fee.

20. On or about March 2, 2000, defendant SNIPES joined ARL by submitting a membership application and paying a membership fee.

21. In or about March 2000, defendant SNIPES had a telephone conversation with his long-time tax advisors regarding tax positions promoted by defendant KAHN.

22. In or about March 2000, defendant KAHN had a telephone conversation with defendant SNIPES' tax advisors in which defendant KAHN asserted that defendant SNIPES was not subject to federal income tax based on the "861 argument."

23. On or about April 19, 2000, defendant SNIPES signed and caused to be sent to the IRS, a fraudulent amended federal income tax return (Form 1040X) for defendant SNIPES for the tax year 1996, wherein a false claim for an income tax refund in the amount of $4,032,806.00 was made based on the "861 argument."

24. In or about June 2000, defendant KAHN traveled to California and gave a private seminar at defendant SNIPES' house to defendant SNIPES and others regarding the "861 argument" and other fraudulent tax positions.

25. Sometime after the meeting in California, defendant SNIPES had a discussion with a worker of his loan-out company about not withholding taxes from the pay of loan-out company workers.

26. On or about June 28, 2000, defendant SNIPES had a telephone conversation with one of his tax advisors in which defendant SNIPES tried to persuade his tax advisor to handle his tax matters in accordance with the "861 argument," notwithstanding his tax advisor's unequivocal advice that there was no merit to the "861 argument," that he was subject to federal income tax, and that he was required to file federal income tax returns.

27. On or about June 29, 2000, one of defendant SNIPES' POA representatives ("Conspirator One") sent a letter on behalf of defendant SNIPES to an IRS employee who previously had issued a letter informing defendant SNIPES that his 1996 Form 1040X claim for refund had been rejected as frivolous; said letter threatened to seek the termination of the IRS employee and requested payment of the refund claim with interest.

28.     On or about October 17, 2000, defendant SNIPES executed an "Affidavit of Incompetence" in which he falsely claimed, among other things, that he did not understand the tax laws and did not know if they applied to him.

29.     On or about November 30, 2000, defendant SNIPES caused to be sent to the Secretary of the Treasury a fictitious "Bill of Exchange" signed by defendant SNIPES, fraudulently denominated in the amount of $1,000,000.00, together with an IRS Payment Voucher (Form 1040-ES) bearing defendant SNIPES' name and Social Security Number.

30.     On or about January 18, 2001, defendant SNIPES caused to be sent to the Secretary of the Treasury a fictitious "Bill of Exchange" signed by defendant SNIPES, fraudulently denominated in the amount of $12,000,000.00, together with two IRS Payment Vouchers (Forms 1040-ES) bearing defendant SNIPES' name and Social Security Number.

31.     On or about April 6, 2001, defendant KAHN caused to be sent to defendant SNIPES an electronic mail (e-mail) message: (a) informing him that the IRS had sent a letter requesting that defendant SNIPES file his 1999 income tax return; (b) offering a response letter that ARL could prepare for a fee, which would involve seeking a "determination letter" from the IRS regarding defendant SNIPES' status as a taxpayer; and (c) advising defendant SNIPES that, if he sought such a determination letter, he would not have to file any tax returns until he received the determination letter.

32.     On or about April 11, 2001, defendant SNIPES renewed his ARL membership and paid for ARL to seek a determination letter.

33. On or about April 11, 2001, defendant ROSILE prepared and signed, and defendant SNIPES signed and caused to be sent to the IRS, a fraudulent amended federal income tax return (Form 1040X) for defendant SNIPES for the tax year 1997, wherein a false claim for an income tax refund in the amount of $7,360,755.00 was made based on the "861 argument."

34. On or about June 29, 2001, one of defendant SNIPES' POA representatives ("Conspirator Two") sent a letter on behalf of defendant SNIPES to the IRS requesting a determination letter regarding defendant SNIPES' status as a taxpayer.

35. On or about October 1, 2001, Conspirator Two sent a letter on behalf of defendant SNIPES to the IRS asserting that defendant SNIPES was not required to file tax returns.

36. On or about October 15, 2001, Conspirator Two sent a letter on behalf of defendant SNIPES to the IRS asserting that defendant SNIPES was not required to file any tax returns until he received a determination letter from the IRS.

37. On or about October 29, 2001, Conspirator Two sent another letter on behalf of defendant SNIPES to the IRS asserting that defendant SNIPES was not required to file any tax returns until he received a determination letter from the IRS.

38. On or about March 2, 2002, defendant SNIPES renewed his ARL membership.

39. On or about September 10, 2002, defendant SNIPES caused to be sent to the Secretary of the Treasury a fictitious "Bill of Exchange" signed by defendant SNIPES, fraudulently denominated in the amount of $1,000,000.00, together with an

IRS Payment Voucher (Form 1040-ES) bearing defendant SNIPES' name and Social Security Number.

40. On or about March 24, 2003, defendant SNIPES renewed his ARL membership.

41. On or about November 3, 2003, defendant SNIPES signed and caused to be sent to a Special Agent of the IRS who was investigating this case a letter in which defendant SNIPES challenged the agent's authority to engage in a criminal tax investigation of defendant SNIPES.

42. On or about January 17, 2004, defendant SNIPES signed and caused to be sent to the same IRS Special Agent another letter in which defendant SNIPES again challenged the agent's authority to engage in a criminal tax investigation of defendant SNIPES.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

On or about April 11, 2001, in Lake County, in the Middle District of Florida, and elsewhere,

>WESLEY TRENT SNIPES,
>EDDIE RAY KAHN,
>and
>DOUGLAS P. ROSILE,

defendants herein, did knowingly make and present, cause to be made and presented, and aid and abet the making and presentation of, a materially false, fictitious, and fraudulent claim for payment upon and against the United States, presented to the United States Department of the Treasury, Internal Revenue Service ("IRS"), an agency of the United States, knowing that the claim was false, fictitious, and fraudulent; to wit, the defendants made and presented to the IRS, caused to be made and presented to the IRS, and aided and abetted the making and presentation to the IRS of, an amended federal income tax return (Form 1040X) for defendant WESLEY TRENT SNIPES for the tax year 1997, wherein a claim for an income tax refund in the amount of $7,360,755.00 was made, knowing such claim to be false, fictitious, and fraudulent.

In violation of Title 18, United States Code, Sections 287 and 2.

## COUNTS THREE THROUGH EIGHT

1. During the calendar years listed below, in the Middle District of Florida and elsewhere,

WESLEY TRENT SNIPES,

the defendant herein, who was a resident of Windermere, in Orange County, Florida, had and received gross income substantially in excess of the minimum filing amounts established by law for each such year; by reason of such gross income defendant WESLEY TRENT SNIPES was required by law, following the close of such calendar years, and on or before the filing dates listed below, to make an income tax return to an authorized representative of the Internal Revenue Service in the Middle District of Florida, or to the Director of the Internal Revenue Service Center at Atlanta, Georgia, or to any other proper officer of the United States, stating specifically the items of his gross income and any deductions and credits to which he was entitled; however, well-knowing all of the foregoing, defendant WESLEY TRENT SNIPES did willfully fail to make an income tax return for such years to any such representative, said Director, or any other proper officer of the United States.

2.	The allegations in paragraph one above are hereby realleged and incorporated by reference as though separately stated for each count.

| COUNT | YEAR | FILING DATE |
|---|---|---|
| 3 | 1999 | 10/16/2000 |
| 4 | 2000 | 4/16/2001 |
| 5 | 2001 | 4/15/2002 |
| 6 | 2002 | 4/15/2003 |
| 7 | 2003 | 4/15/2004 |
| 8 | 2004 | 4/15/2005 |

All in violation of Title 26, United States Code, Section 7203.

A TRUE BILL,

_____
Foreperson

PAUL I. PEREZ
United States Attorney

By: _____
JAMES R. KLINDT
First Assistant United States Attorney

By: _____
ROBERT O'NEILL
Assistant United States Attorney
Chief, Criminal Division

By: _____
M. SCOTLAND MORRIS
Assistant United States Attorney

By: _____
JEFFREY A. McLELLAN
Trial Attorney
U.S. Department of Justice Tax Division

# UNITED STATES DISTRICT COURT

Middle District of Florida
Ocala Division

THE UNITED STATES OF AMERICA

vs.

WESLEY TRENT SNIPES
EDDIE RAY KAHN
DOUGLAS P. ROSILE

## INDICTMENT

Violations:
Ct. 1:     18 U.S.C. § 371
Ct. 2:     18 U.S.C. §§ 287 and 2
Cts. 3-8:  26 U.S.C. § 7203

A true bill,

_M. Sawyer_
Foreperson

Filed in open court this _12th_ day

of OCTOBER, A.D. 2006.

_Jodi L. Wiles_
Clerk

Bail  $_____