UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

-vs-                                                          Case No.  5:06-cr-22-Oc-10GRJ

WESLEY TRENT SNIPES
_____/

## ORDER ON MOTIONS

Defendant Snipes has filed three motions: (1) a Motion to Dismiss All Counts in the Indictment, (Doc. 145); (2) a Motion to Sever And To Continue the Trial Date, (Doc. 148); and (3) a Motion For a Change of Venue, (Doc. 144).  The Government has filed responses in opposition to all three motions.  (Docs. 176, 178, and 175).

Upon due consideration, each of the motions is without merit and will be Denied.[1]

The Superseding Indictment is framed in eight counts and names three Defendants: Wesley Trent Snipes, Eddie Ray Kahn, and Douglas P. Rosile.[2]

Count One alleges a conspiracy among and between the three Defendants to defraud the Government in violation of 18 U.S.C. § 371.  The specific object of the conspiracy offense is alleged to have been the frustration of the Internal Revenue Service ("IRS") in its attempt to collect income taxes owed by Defendant Snipes for the tax years 1999 through 2005.

---

[1]The Court previously addressed Defendant Snipes' request to continue trial, and has scheduled trial to commence on Monday, October 22, 2007.  (Doc. 186).

[2]See Doc. 6.

Count Two alleges an offense in violation of the false claims statute, 18 U.S.C. § 287.  It charges that all three Defendants, on or about April 11, 2001, aided and abetted each other in the filing of an amended income tax return for Defendant Snipes relating to the tax year 1997 and falsely claiming a refund of more than $7.3 million dollars.

Counts Three through Eight are brought against Defendant Snipes alone, charging offenses in violation of 26 U.S.C. § 7203, namely, that he failed to file income tax returns for the tax years 2000 through 2005, each year constituting a separate count.

## THE MOTION TO DISMISS

### I.   Count One - The Conspiracy Charge

Defendant Snipes argues that Count One, the conspiracy charge, fails to state an offense because it does not allege all of the essential elements of the crime defined by 18 U.S.C. § 371.  He is, quite simply, mistaken.

The statute proscribes two distinct types of conspiracy offenses: (1) a conspiracy to commit some substantive offense violative of federal criminal law; and (2) a conspiracy to defraud the United States or one of its governmental agencies.  18 U.S.C. § 371.  Here, the grand jury elected to charge the Defendants with a conspiracy offense in the second statutory category – a conspiracy to defraud the IRS, a governmental agency.

The essential elements of the offense of conspiring to defraud the United States are: (1) an agreement between two or more people to defraud the Government; (2) the Defendants' knowing and willful joinder and participation in that agreement; and (3) the

2

commission of an overt act by one of the conspirators in furtherance of the conspiracy. United States v. Adkinson, 158 F.3d 1147, 1153-54 (11th Cir. 1998); United States v. Suba, 132 F.3d 662, 672 (11th Cir. 1998); see also United States v. Klein, 247 F.2d 908 (2d Cir. 1957).  The Superseding Indictment clearly tracks the language of the statute and plainly alleges each of these elements; and, under the law of this Circuit, that is enough.  See United States v. Ndiaye, 434 F.3d 1270, 1299 (11th Cir. 2006) (holding that "an indictment that tracks the wording of the statute, as long as the language sets forth the essential elements of the crime," is sufficient and must be upheld); United States v. Bobo, 344 F.3d 1076, 1083 (11th Cir. 2003) ("For an indictment to be valid, it must contain the elements of the offense intended to be charged, and sufficiently apprise the defendant of what he must be prepared to meet."); United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992) ("The indictment is sufficient if it charges in the language of the statute.") See also Russell v. United States, 369 U.S. 749, 763-64 (1962).

The balance of Defendant Snipes' arguments about the insufficiency of Count One are made in anticipation of what the evidence will show (or not show) at trial, and such arguments cannot properly be considered in deciding a pretrial motion to dismiss.  See United States v. Sampson, 371 U.S. 75, 78-79 (1962); United States v. Nat'l Dairy Prods. Corp., 372 U.S. 29, 33, n. 2 (1963); Critzer, 951 F.2d at 307-08;  (11th Cir. 1992); United States v. Cadillac Overall Supply Co., 568 F.2d 1078, 1082 (5th Cir. 1978).

The motion to dismiss Count One, the conspiracy charge, will be Denied.

3

II.    Count Two - The False Claim Offense

The argument here is that Count Two cannot stand since the focus of the charge – Defendant Snipes' amended income tax return for 1997 – did not purport to be a valid claim because it was not signed under penalty of perjury.  In fact, he says, the return was altered to state that it was signed "under no penalties of perjury."

Apart from the fact that this argument also anticipates the evidence and would require the Court to improperly look beyond the face of the Superseding Indictment, there is no persuasive authority for the Defendant's position.[3]  To the contrary, the law weighs in favor of permitting this charge to stand.  See United States v. Neifert-White Co., 390 U.S. 228, 233 (1968) ("This remedial statute [the False Claims Act] reaches beyond 'claims' which might be legally enforced, to all fraudulent attempts to cause the government to pay out sums of money."); quoted in United States v. Killough, 848 F.2d 1523, 1533 (11th Cir. 1988).  At least one other Circuit Court of Appeals has affirmed a § 287 conviction under strikingly similar circumstances.  See United States v. Nash, 175 F.3d 429 (6th Cir. 1999) (affirming conviction under § 287 for filing Nonresident Alien Income Tax Returns signed

---

[3]Defendant Snipes cites to an IRS Revenue Ruling and an unpublished decision from another jurisdiction in support of his position that the Form 1040X in this case cannot form the basis of a false or fraudulent claim under § 287.  See Rev. Rul. 2005-18; Letscher v. United States, No. 99 Civ. 2602(NRB), 2000 WL 1290864 (S.D.N.Y. Sept. 11, 2000).  Both address the validity of tax returns for purposes of obtaining an income tax refund under the Internal Revenue Code.  Neither the Revenue Ruling nor the unpublished decision involve any criminal charges under 18 U.S.C. § 287, and they do not construe or apply that statute in any way.

"with all rights reserved, without prejudice" and labeled as "Revocation of Election/Claim of Refund").

Defendant Snipes' motion to dismiss Count Two will be Denied.[4]

III.   Counts Three Through Eight - Failure to File Returns

Defendant Snipes moves to dismiss these counts on two grounds: (1) that he satisfied the filing requirements when he submitted to the IRS in 2004 certain statements in affidavit form; and (2) that he is a victim of selective prosecution for constitutionally impermissible reasons.

With respect to the first of these contentions, the Court cannot consider the 2004 filings in deciding a motion to dismiss.  Under the Federal Rules of Criminal Procedure and clearly established decisional law, the Court is precluded from "piercing" the Superseding Indictment and engaging in a pretrial determination of the sufficiency of the evidence. United States v. Sampson, supra, 371 U.S. 75, 78-79 (1962); United States v. Critzer, supra, 951 F.2d 306, 307 (11th Cir. 1992).

With respect to the argument about selective prosecution, the Defendant contends that the Government has initiated and pursued the failure to file counts (1) because of his race (African-American); (2) because he exercised his right to counsel; and (3) because

---

[4]The Defendant also uses this same theory to argue that Count Two of the Superseding Indictment does not allege the existence of a valid claim, and therefore must be dismissed for failure to allege all elements of the charge.  This argument fails for the same reason as the first theory.  There is no requirement that any claims which form the basis of a criminal charge under 18 U.S.C. § 287 must be valid and enforceable.

he exercised his right to free speech, all in violation of his Fifth, Sixth, and First Amendment rights, respectively.

The essence of the job of any prosecutor — the awesome discretionary power of the position – is to decide who will be prosecuted and what offense will be charged.  In a very real way, every criminal case represents a selective prosecution.  Necessarily, therefore, even though a particular defendant may appear to be one of many similarly situated offenders who have not ben charged, the courts in such cases have no right (and wholly insufficient resources) to infringe upon the executive branch authority of the prosecutor and inquire into the reasons why one person was charged and another was not.  The Supreme Court has declared that an indictment may be dismissed as an improper "selective prosecution" only where there is "clear evidence" that the prosecution is motivated by a constitutionally impermissible reason.[5]  See United States v. Armstrong, 517 U.S. 456, 463-64 (1996); United States v. Chemical Foundation, Inc., 272 U.S. 1, 14-15 (1926).  The stringency of this burden is perhaps best illustrated by the fact that, despite frequent mention in the cases of the concept of "selective prosecutions," only two decisions can be found in which an indictment has actually been dismissed for that reason.  See United States v. Correa-Gomez, 160 F. Supp. 2d 748 (E.D. Ky. 2001), aff'd, 328 F.3d 297 (6th Cir. 2003); United States v. McDonald, 553 F. Supp. 1003 (S.D. Tex. 1983).

---

[5]The Eleventh Circuit has interpreted this "clear evidence" standard to require "clear and convincing evidence" of selective prosecution.  United States v. Smith, 231 F.3d 800, 808 (11th Cir. 2000).

Defendant Snipes' effort to show racial prejudice in his prosecution is limited to the factual allegation that the Government is well-aware that co-Defendant Kahn, who is Caucasian, has not filed any income tax returns for the tax years 1997-2002, yet the Government has chosen not to charge Kahn with willful failure to file.  According to Defendant Snipes, the Government's refusal to charge Kahn, while focusing solely on Defendant Snipes, demonstrates that prosecuting him for failure to file has a discriminatory effect, and was motivated by a discriminatory purpose.  This *non sequitur* is a far cry from clear and convincing evidence of unconstitutional motivation,[6] especially where the record clearly shows that Defendants Snipes and Kahn are not similarly situated persons.

From a prosecutor's point of view, especially in tax cases, the primary objective in deciding whom to prosecute is to achieve general deterrence.  Here, Defendant Snipes is admittedly a well known movie star, and a person of apparent wealth, whose prosecution has already attracted considerable publicity.  By contrast, the Defendant Eddie Ray Kahn does not appear to share Defendant Snipe's notoriety.  "Since the government lacks the means to investigate and prosecute every suspected violation of the tax laws, it makes good sense to prosecute those who will receive, or are likely to receive, the attention of the media."  United States v. Catlett, 584 F. 2d 864, 868 (8th Cir. 1978) (internal citations omitted); see also United States v. Hastings, 126 F.3d 310, 314 (4th Cir 1997) (no selective

---

[6]Defendant Snipes' argument is also insufficient to justify discovery proceedings concerning this issue.  The Supreme Court has held that "justifications for a rigorous standard for the elements of a selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim."  Armstrong, supra, 517 U.S. at 468.

prosecution in case against prominent businessman and Republican party leader charged with failure to file income tax returns).

The Court also finds that Defendant Snipes has failed to meet his burden of providing "a credible showing of different treatment of similarly situated persons"[7] with respect to the other clients of Defendant Eddie Ray Kahn's organizations: American Rights Litigators ("ARL") and Guiding Light of God Ministries ("GLGM").  To begin with, Defendant Snipes has not identified the race or ethnicity of any of these approximately 2000 clients, nor has he even established that they did not file income tax returns.  Instead, Defendant Snipes relies solely upon supposition that these clients have engaged in similar conduct, and he makes no showing that any of the other clients are among the rich and famous whose prosecution would achieve the same general deterrent effect.[8]

The motion to dismiss or for discovery on the ground of selective prosecution based on race will be Denied.[9]

---

[7]Armstrong, 517 U.S. at 470.

[8]The fact that Defendant Snipes has been in possession of ARL's entire client list for some time and yet has been unable to present anything more than speculation further weakens his argument.  See Armstrong, 517 U.S. at 470 ("if the claim of selective prosecution were well founded, it should not have been an insuperable task to prove that persons of other races were being treated differently than [defendants].").

[9]To the extent Defendant Snipes argues that he is being subjected to an impermissible prosecution due to exercising his right to counsel and/or engaging in free speech, his "evidence" is even weaker and requires no further discussion.  The motion to dismiss and/or for discovery on those grounds will be Denied.

## THE MOTION TO SEVER

Defendant Snipes has moved, pursuant to Fed. Rule Crim. P. 14, for an order severing his trial from that of his co-Defendants on three grounds: (1) that "the defenses in this case will be antagonistic to each other;"[10] (2) that the "spillover effect" of the evidence presented against co-Defendants Kahn and Rosile will prejudice Defendant Snipes' right to a fair trial; and (3) that the anticipated trial conduct of co-Defendant Kahn, who is proceeding *pro se*, will also prejudice Defendant Snipes' right to a fair trial.

The motion to sever is due to be denied because it anticipates developments at trial. Moreover, it does not appear that the grounds as presently stated are sufficient to require a severance in any event.  It is not enough that counsel is concerned that the defenses will be antagonistic; they must be mutually exclusive before a severance is to be justified on those grounds.  That is, in order to believe the defense of one defendant, the jury must necessarily disbelieve the defense of the other defendant.  United States v. Garcia, 405 F.3d 1260, 1272 (11th Cir. 2005); see also United States v. Farrell, 877 F.2d 870, 876-77 (11th Cir. 1989) ("Specifically, the essence or core of the defenses must be in conflict, such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other.").  The mere fact that co-defendants all testify and each gives damaging testimony against the other does not, standing alone, establish mutually inconsistent defenses.  Zafiro v. United States, 506 U.S. 534, 540 (1993).

---

[10]Motion to Sever at 1.  (Doc. 148).

With respect to the arguments about "spillover effect" and expected misconduct by another Defendant, those are matters that the Court can and should deal with at trial by excluding inadmissible evidence, giving limiting instructions to the jury, and regulating the conduct of all parties.  See United States v. Blankenship, 382 F.3d 1110, 1123 (11th Cir. 2004); United States v. Schlei, 122 F.3d 944, 984 (11th Cir. 1997); United States v. Knowles, 66 F.3d 1146, 1160 (11th Cir.  1995); United States v.  Veteto, 701 F.2d 136, 138-39 (11th Cir. 1983).

The motion to sever will be Denied without prejudice to renewal at trial if sufficient grounds arise.

## MOTION FOR A CHANGE OF VENUE

Defendant Snipes next requests, pursuant to 18 U.S.C. § 3237(b) and Federal Rule of Criminal Procedure 21(b), that venue of his case be transferred to the United States District Court for the Southern District of New York.  While admitting that venue is appropriate in this district for the conspiracy and false claim charges (Counts I and II) the Defendant contends that venue is also appropriate in New York, California and Massachusetts, and that his case should be transferred to New York for the convenience of the parties and witnesses, as well as in the interests of justice.  Defendant Snipes further argues that the Southern District of New York is the only district which has venue over his six failure to file charges (Counts III through VIII) and that he is electing to have those counts tried in New York pursuant to 18 U.S.C. § 3237(b).

I.    Venue Over the Failure to File Charges

The Government has charged Defendant Snipes with six failure to file counts under 26 U.S.C. § 7203.  Congress has prescribed that venue is appropriate for such charges "in any district in which such offense was begun, continued, or completed."  18 U.S.C. § 3237(a).  However, a defendant "may elect to be tried in the district in which he was residing at the time the alleged offense was committed," if and only if the defendant files a motion stating such an election "within twenty days after arraignment of the defendant upon indictment or information."  18 U.S.C. § 3237(b).  The Defendant attempts to make this election in his present motion to change venue, and requests that the failure to file charges against him be tried in the Southern District of New York because he was a resident of New York at the time he allegedly failed to file his tax returns.

Defendant Snipes was arraigned before the Magistrate Judge on December 8, 2006.  Therefore, in order to make a timely election under § 3237(b), he had to file his motion with the Court on or before December 29, 2006.[11]  However, Defendant Snipes did not make his motion until June 4, 2007, over five months after the election period expired.  The Defendant attempts to excuse his tardiness by pointing to the Magistrate Judge's Orders extending the deadlines for filing motions in the case.[12]  However, Defendant Snipes did

---

[11]See Fed. R. Crim. P. 45(a).

[12]See Docs. 85, 134.

11

not request an extension of the motions deadline until January 12, 2007,[13] and the Magistrate Judge's original Order extending the motions deadline was not entered until January 16, 2007, well after the expiration of the § 3237(b) election period.  Moreover, the Order does not address § 3237(b) in any way.  Accordingly, the Court cannot find that Defendant Snipes' election under 3237(b) is timely.[14]

Defendant Snipes also argues that venue of the failure to file charges is not appropriate in this Court because the alleged offenses were not begun, continued, or completed in Florida.  See 18 U.S.C. § 3237(a).  Both sides agree that venue for a failure to file charge under § 7203 lies both in the judicial district of the defendant's legal residence and in the judicial district of the applicable IRS Service Center where the income tax returns should have been filed.  See United States v. Clinton, 574 F. 2d 464 (9th Cir. 1978); United States v. Calhoun, 566 F. 2d 969 (5th Cir. 1978);[15] 26 U.S.C. §§ 6091(b)(1)(A)(i), (ii).  Although the superseding indictment alleges that Defendant Snipes was a resident of Windermere in Orange County, Florida during the relevant time period, Defendant Snipes

---

[13]See Doc. 72.

[14]The Court also finds that Defendant Snipes never filed a specific request to extend the § 3237(b) filing deadline, or even mentioned this statute in any of his other motions.  Even if he had made such a request, the Court would be unable to grant it.  Cf. Bowles v. Russell, ___ U.S. ___, 127 S. Ct. 2360 (June 14, 2007); United States v. Humphreys, 982 F. 2d 254 (8th Cir. 1992); Abrams v. McGohey, 260 F.2d 892 (2d Cir. 1958).

[15]All decisions issued by the Fifth Circuit prior to October 1, 1981 are binding precedent in this Circuit.  Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc).

insists that he was a resident of New York City, New York, and that his previous income tax returns were mailed to the IRS Service Center in Andover, Massachusetts.

It is clear, therefore, that the question of residency, and thus appropriate venue, is a disputed issue of fact. Such disputed issues of fact must be submitted to the jury under a preponderance of the evidence standard of proof. See United States v. Stickle, 454 F.3d 1265, 1271-72 (11th Cir. 2006); United States v. Breitweiser, 357 F.3d 1249, 1253 (11th Cir. 2004); United States v. Stitzer, 785 F.2d 1506, 1518-20 (11th Cir. 1986); United States v. Males, 715 F.2d 568 (11th Cir. 1983).

Defendant Snipes' motion to change venue with respect to the failure to file charges will therefore be Denied.

II.   Venue Concerning the Conspiracy and False Claim Charges

Defendant Snipes contends that venue is appropriate for his conspiracy charge in New York, California, and Florida because some of the alleged overt acts committed in furtherance of the conspiracy took place in all three states.[16] He contends that venue for his false claim charge is appropriate in New York, Florida, and Massachusetts because the income tax refund form was received at the IRS Service Center in Andover, Massachusetts, and because it is reasonable to believe that some of the acts underlying the  preparation and filing of the form took place in New York.[17]  Finally, as already

---

[16]See Motion to Change Venue at 6-7.  (Doc. 144).

[17]Id. at 7-8.

discussed, Defendant Snipes contends that venue is appropriate for the failure to file charges in New York alone.[18]  Given these "facts," he argues that the only district which has venue over all of the alleged offenses is the Southern District of New York.  Because the Court has already determined that the question of proper venue for the failure to file charges must be decided by the jury, and because Defendant Snipes does not refute that venue concerning the other counts is appropriate in Florida, the Court does not find these arguments persuasive.[19]

Defendant Snipes next argues that venue should be transferred to New York pursuant to Federal Rule of Criminal Procedure 21(b), which provides that "the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties and witnesses and in the interest of justice."  The burden is on the moving Defendant to justify the transfer; and, in particular, he must demonstrate a substantial imbalance of inconvenience to himself.  United States v. Stickle, 355 F. Supp. 2d 1317, 1321 (S.D. Fla. 2004).

The United States Supreme Court has provided guidance in the form of several factors the Court may consider in evaluating a motion for change of venue, such as: (1) the location of the defendants; (2) the location of possible witnesses; (3) the location of events

---

[18]Id. at 9-10.

[19]Conspiracy charges may be prosecuted in the district where the conspiracy was formed or in any district where an overt act was committed in furtherance of the conspiracy.  Schlei, 122 F.3d at 975.  Venue for false claim charges lies in either the district where the claim was prepared, mailed or presented to the Government.  United States v. Wuagneux, 683 F.2d 1343, 1356 (11th Cir. 1982).

likely to be at issue; (4) the location of documents and records likely to be involved; (5) the potential disruption of a defendant's business; (6) expenses to the parties; (7) location of counsel; (8) relative accessibility of the place of trial; (9) the docket condition of each district involved; and (10) any other special factors which might affect transfer.  Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240, 243-44 (1964).  Defendant Snipes contends that a change of venue to the Southern District of New York is appropriate under eight of these factors.[20]

A.    *Location of Defendant, Expense to the Parties, and Unusual Factors*

The Defendant's argument as to these three factors rests solely on his assertion that he owns homes in both New York and California, and that his wife and four young children are now living at his home in California.  According to Defendant Snipes, if venue remains with this Court, his wife and young children will not be able to travel to Florida for the trial, which is projected to last approximately one month.  Therefore, if the trial is held in this district, Defendant Snipes claims he will be forced to pay for lodging for the duration of his trial, he will have to rent office and storage space for his legal counsel, and he will have to pay to fly home every weekend to see his family.

---

[20]The Defendant does not argue that conducting a month-long trial in Florida as opposed to New York would unduly disrupt his professional career.  He also does not argue that docket conditions support a transfer to the Southern District of New York.  The Government, however, argues that docket conditions in the Southern District of New York, which is congested in comparison to the Middle District of Florida, weigh in favor of keeping the case here.

Putting aside for the moment that Defendant Snipes does not, in fact, reside in New York at this time,[21] "[a] criminal defendant has no right to be tried in the place of his domicile, . . ., and the defendant's concerns about being tried away from home are ordinarily of little relevance to a motion for a change of venue." United States v. Bagnell, 679 F.2d 826, 832 (11th Cir. 1982); see also United States v. Walker, 559 F. 2d 365, 372 (5th Cir. 1977); United States v. McMahan, Case No. 8:04-CR-348-T-24TGW, 2006 WL 224027, at * 1 (M.D. Fla. Jan. 30, 2006). The Court is therefore unswayed by Defendant Snipes' contention that he will bear significant travel, lodging, and/or additional legal expenses, particularly in light of the fact that he is an affluent individual who travels frequently,[22] and he has a residence in Orange County which is within reasonable driving distance from the Court. Defendant Snipes' argument on this point is equally unpersuasive because it fails to account for the fact that if his trial is moved to New York as he requests, he would continue to incur the same travel expenses flying back and forth from New York to California to visit his wife and children.[23] Lastly, absent an unwarranted severance

---

[21]At the time of his arraignment, Defendant Snipes asserted, through counsel, that his place of residence is Marina Del Rey, California, and that is where the Magistrate Judge directed Defendant Snipes to reside until trial. (Doc. 60).

[22]Since his arraignment, Defendant Snipes was granted leave to travel to Namibia for approximately four weeks to complete production of a motion picture. (Doc. 60). On August 3, 2007, Defendant Snipes requested leave to travel to Vancouver, Canada for a period of at least six weeks in order to film another motion picture. (Doc. 181). Given Defendant Snipes' requests to travel out of the country for lengthy periods of time, his claims of undue hardship relating to travel ring hollow.

[23]While Defendant Snipes does not specify where his family expects to reside during his
(continued...)

resulting in two costly trials, Defendant Snipes completely ignores the undue hardship that a transfer of this case to New York would place on his co-Defendants, both of whom have resided in and have strong ties to Florida and appear to lack substantial financial resources to defray the expenses of a lengthy trial in New York.

B.    *Location of Witnesses*

Defendant Snipes next argues that a critical part of his defense will involve the testimony of several witnesses who are located in New York.  In particular, he intends to call his former tax advisors, whose offices are in New York City, as well as numerous character witnesses in the arts and film industry, who reside primarily in New York and New Jersey.  According to Defendant Snipes, many of these character witnesses work for production companies in New York, and their participation in his trial will result in a hardship both to the witnesses themselves as well as to the entire production crew for the projects in which they are currently involved.  Defendant Snipes does not, however, suggest that these witnesses would not be available for trial if venue is not transferred.

In any event, the magnitude of this issue is not nearly as large as Defendant Snipes paints it to be.  Because of the very narrow scope of their testimony, which quickly becomes cumulative, it has been the uniform practice of this Court for many years, applying Federal Rules of Evidence 403 and 611(a), to limit the number of character

---

[23](...continued)
trial, it is presumed that if they are unable to travel to Florida, they are equally unable to travel to New York City.

witnesses appearing for the accused under Federal Rule of Evidence 404(a)(1) to three

persons.[24]   The distant location of such a limited number of witnesses making a brief

appearance during a month long trial is, therefore, not a matter of great significance in

deciding a motion for change of venue.[25]   Indeed, it is likely that a change of venue would

inconvenience more witnesses than it would accommodate because, the Government

asserts, many of its witnesses are located in Florida.

C.     *Location of the Majority of Events At Issue*

Defendant Snipes contends that at all periods of time relevant to his case he was a

resident of New York City, and that any contact he had with co-Defendants Kahn and

Rosile occurred either while he was at his home in New York, or working in California.

Defendant Snipes' argument simply ignores the allegations of the superseding indictment

that the majority of the events surrounding the conspiracy and false claim charges took

place through ARL and GLGM, which were located and operated in Lake County, Florida.

His argument also ignores the fact that his place of residency during the time in question

---

[24]The Government is subject to the same limitation on rebuttal, and if the prosecution intends to call any character witnesses in its rebuttal case, the Court will consider the possibility of allowing greater latitude to the Defendant with respect to the number of such witnesses to be called during the presentation of his case.

[25]None of the decisions cited by Defendant Snipes on this point are persuasive.  Aside from the fact that the majority are unpublished decisions, none are from this Circuit, and all of them involve cases where a majority of the witnesses - not just a majority of character witnesses - resided in other districts.  See e.g., United States v. Martino, No. S1 00 CR 389(RCC), 2000 WL 1843233, at * 6 (S.D.N.Y. Dec. 14, 2000); United States v. Ohran, No. 99 CR, 142(JSM), 2000 WL 620217, at *3-4 (S.D.N.Y. May 12, 2000); United States v. Russell, 582 F. Supp. 660, 662-63 (D.C.N.Y. 1984).

is in dispute, and will most likely be resolved at trial.   Thus, while the Government concedes that some events took place in both New York and California, Defendant Snipes has not demonstrated that a <u>majority</u> of the events took place anywhere outside of Florida.

D.    *Location of Documents Likely to Be Used At Trial*

The Court does not fully understand Defendant Snipes' argument on this factor, particularly when he concedes that almost all of the documents likely to be used at trial are already located within this district.   Apparently he believes that because the Government removed these documents from other locations and relocated them to Florida, the Government should be required to transport them to New York for trial.    This argument disregards completely the other <u>Platt</u> factors which weigh strongly in favor of keeping venue in this Court, and also disregards the fact that the bulk of the documents relating to his co-Defendants have always been located in Florida.  What Defendant Snipes is correct about, however, is that the location of documents should not weigh heavily in favor of either side.   As Defendant Snipes points out, many of the documents have been stored electronically and are thus easily transported.   Given the conveniences of modern transportation and communication, consideration of the location of documents does not tip the balance in favor of either party.

E.    *Location of Co-Lead Counsel and Accessibility of Courthouses*

The last two factors raised by Defendant Snipes revolve around purported logistical difficulties he and his legal team anticipate they will encounter if this case remains in Florida.  "[I]t is indisputable that New York, which is home to two major international

airports, and is easily accessible by car and train, is more accessible than Ocala, Florida."[26] Given this increased accessibility, Defendant Snipes contends that it will be easier for his attorneys, who are located in Washington D.C., Atlanta, Georgia, and Miami, Florida, to travel to New York City as opposed to Ocala.

Upon reflection, the Court does not believe that the travel times for legal counsel and/or accessibility of courthouses is a factor that deserves much weight.[27]  While the Ocala Courthouse is not located in the immediate vicinity of a major airport, it is within one hour and a half driving distance from two international airports, (Tampa and Orlando), and is within a 45 minute driving distance from Gainesville Regional Airport which has regular direct flights to and from Atlanta and Miami.  As the Government points out, these driving times are only slightly longer and, on some occasions, may even be less, than the congested commute from New York airports to downtown Manhattan.  While it may be that co-counsel Mr. Martin would have an easier commute from Washington D.C. to New York, it is not at all clear that his co-counsel located in Atlanta and Miami would have such leisurely travel.  Moreover, Defendant Snipes has failed to account for the fact that three of the four Government attorneys assigned to this case reside within the Middle District of Florida, and that both of the IRS Special Agents are based in Florida.  Accordingly, neither

---

[26]Motion to Change Venue at 15.

[27]In fact, Defendant Snipes recognizes that the location of his legal counsel is generally afforded less weight than other Platt factors.

the location of Defendant Snipes' co-lead counsel nor the accessibility of courthouses weighs in favor of a transfer of venue.

F.    Conclusion

Having reviewed all of the arguments by Defendant Snipes and analyzed each of the Platt factors raised, the Court finds that the Defendant has not met his burden of demonstrating a substantial imbalance of inconvenience to himself.  When Defendant Snipes motion is viewed in conjunction with this Circuit's strong policy favoring joint trials in conspiracy cases, the denial of Defendant Snipes' motion to sever, the convenience of most of the witnesses and defendants, and the fact that Defendant Snipes has failed to particularlize any real prejudice, it is clear that transfer to the Southern District of New York is not warranted.

## Conclusion

Accordingly, upon due consideration, it is hereby ORDERED and ADJUDGED as follows:

(1)    Defendant Wesley Trent Snipes' Motion to Dismiss All Counts In the Indictment, (Doc. 145) is DENIED;

(2)    Defendant Wesley Trent Snipes' Motion to Sever, (Doc. 148), is DENIED; and

(3)    Defendant Wesley Trent Snipes' Motion for a Change of Venue, (Doc. 144), is DENIED.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 5th day of September, 2007.

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Eddie Ray Kahn, *pro se*